**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　**Criminal Action No. 3:09CR23**
　　　　　　　　　　　　　　　　　　　　**JUDGE BAILEY**

**TYREEK RASHAUN CLARK,**

        **Defendant.**

**REPORT AND RECOMMENDATION TO**
**DENY DEFENDANT'S MOTION TO SUPPRESS ALLEGED STATEMENTS [21]**

## I.　　INTRODUCTION

On July 1, 2009, came the United States of America by Erin Reisenweber, appearing for Thomas O. Mucklow, Assistant United States Attorney, and also came the Defendant, Tyreek Rashaun Clark, in person and by his counsel, Nicholas J. Compton, Assistant Federal Public Defender, for an evidentiary hearing in the above-styled criminal action. This is a Report and Recommendation on Defendant's Motion to Suppress Alleged Statements [21].

## II.　　BACKGROUND

**1.**　　On March 18, 2009, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the Defendant on two (2) counts.

**2.**　　The charges in the March 18, 2009, indictment against the Defendant are as follows:

Count One (1) -　　　Distribution of Cocaine in violation of 21 U.S.C. §841(a)(1) & (b)(1)(C)and
Count Two (2-) -　　　Distribution of Cocaine in violation of 21 U.S.C. §841(a)(1) & (b)(1)©

**3.**　　On June 12, 2009, the Defendant filed a Motion to Suppress Alleged Statements [21] .

**4.**　　On this date of July 1, 2009 , the Court held an evidentiary hearing on Defendant's motion to suppress alleged statements [21]. The Government called Sgt. Snyder to testify. Defense

counsel cross-examined this witness at length and did not call any of his own witnesses.

### III.  FACTUAL PRESENTATION

**A.      A summary of the evidence the Government presented at the hearing  is as follows:**

The Defendant was under investigation for video taped buys of crack cocaine which allegedly occurred on July 5, 2006 and July 13, 2006.  The Defendant was shot at a night club in Virginia on July 19, 2006.  On August 3, 2006, Sgt. Ted Snyder met with the Defendant at the Winchester Medical Center for the purposes of conducting an interview about the ongoing investigation of the July 5, 2006 and July 13, 2006 incidents described in the indictment.

During the meeting,  Defendant was presented with a Cooperative Understanding Agreement, which was signed by the Defendant.  Sgt. Snyder testified that the Defendant appeared to be alert and responsive and to understand why Sgt. Snyder was there.   Sgt. Snyder further testified that if Defendant had appeared otherwise, he would not have conducted the interview.

The Defendant was aware during the interview that he was involved in a criminal investigation being conducted by the Task Force and that charges would probably be filed against him but that he was not under arrest at the time of the interview.  Following Defendants review and execution of the agreement, defendant provided information as to the identity of several individuals, including himself, in some photographs.  When asked to provide drug involvement of those individuals; however, defendant declined saying that he did not want to be a "rat."  Defendant then added that he wanted to think over the situation before saying anything else.  The interview was terminated by Sgt. Snyder at that point.

**B.      A summary of the evidence presented by the Defendant is as follows:**

The Defendant does not dispute the Governments factual recitation of what occurred at the interview on August 3, 2006 in the Winchester Medical Center. However, the Defendant would add that the Defendant was paralyzed at the time of the interview and could not leave the hospital bed. Defendant submitted medical records which indicated that Defendant was on certain medications at the time of the interview. Defendant argues that because of Defendant's medical condition at the time of the interview that those statements were not a product of Defendant's free and rational choice. Defendant's counsel pointed out on cross examination that Sgt. Snyder did not make an appointment to meet with the Defendant nor did he consult with any doctors or nurses prior to meeting with the Defendant. Sergeant Snyder testified that it is not typical procedure to make appointments in these situations and that neither a nurse nor a doctor would speak to him about Defendants condition, even if he had asked.

## IV.  LEGAL ANALYSIS

The Self-Incrimination Clause of the Fifth Amendment ensures that "[n]o person ... shall be compelled in any criminal case to be a wit-ness against himself." U.S. Const. Amend. V.   The Government has the burden of proving by a preponderance of the evidence that the statement or confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489 (1972).

In considering the voluntariness of a statement or confession, the standard is whether [defendant's] confession [was] the product of a rational intellect and free will, and is expressed in *Townsend v. Sain,* 372 U.S. 293, 307 (1963). The voluntariness inquiry under the Due Process Clause of the Fifth Amendment requires the Court to determine "whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir.1987) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225

(1973)).  *See also Hutto v. Ross,* 429 U.S. 28, 30 (1976) (per curiam) (In order to determine whether a statement is voluntary, the Court must look to see "whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of improper influence.") (internal quotation marks and alterations omitted).

In *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997), the Court held that

> [T]o determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider "the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." (citation omitted).

*See, also, United States v. Long*, 990 F. Supp. 468, 470 (DC WV 1997).  In *United States v. Gray*, 137 F.3d 765, 771 (4th Cir. 1998), the Court said that "A statement or confession is given voluntarily when it is the product of 'free and unconstrained choice' of the person giving it." (citation omitted). Furthermore, coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.  *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).

However, "[t]he mere existence of threats, violence, implied promises, improper influence, or other coercive police activity ... does not automatically render a confession involuntary. The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *United States v. Braxton*, *supra* (internal quotation marks omitted) ."Because the police activity used to elicit an incriminating statement must be coercive before a statement will be held to be involuntary, it is not surprising that "'very few incriminating statements, custodial or otherwise, are held to be involuntary.'" (Citation omitted).  *United States v. Braxton*, *supra* at 786.

One of the issues to be considered therefore, is whether the defendant was in custody at the time the statement was made. It is well established that persons who are "'taken into custody or otherwise deprived of [their] freedom of action in any significant way'" must be given *Miranda* warnings before being questioned. *Sansbury v. California,* 511 U.S. 318, 322 (1994) (per curiam) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)). In *Miranda,* the Supreme Court afforded protection to the Fifth Amendment privilege against compelled self-incrimination "from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." *Berkemer v. McCarty,* 468 U.S. 420, 428 (1984). "[C]ourts must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* at 781 (internal quotation marks omitted); *see also United States v. Howard,* 115 F.3d 1151, 1154 (4th Cir.1997) ("An individual is 'in custody' for *Miranda* purposes when, under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.'" (quoting *Berkemer,* 468 U.S. at 440).

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Accord Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

Defendant cites *Mincey v. Arizona*, 437 U.S.385 (1978) for the proposition that since the Defendant's statements were made in a hospital that they should be deemed involuntary. However,

*Mincey* is not factually similar to this case. In *Mincey*, the interview took place just a few hours after Defendant had been seriously wounded. *Id.* At 398-399. In addition, the Defendant in *Mincey* was depressed almost to the point of coma, confused and unable to think clearly and was encumbered with tubes needles and breathing apparatus. *Id.* At 398-399.

## V. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**The issue presented is whether given the totality of the circumstances, the defendants freedom of action was curtailed to a degree associated with formal arrest and whether his statements were freely given during the interview at the hospital on August 3, 2006.**

1. The Court finds that the Defendant was under investigation for the alleged distribution of crack cocaine on July 5, 2006 and July 13, 2006.

2. The Defendant was shot at a night club in Virginia on July 19, 2006 and was taken to the Winchester Medical Center.

3. A couple weeks after the injury on August 3, 2006, Sgt Ted Snyder went to the Winchester Medical Center for the purposes of conducting an interview about the ongoing investigation of the July 5, 2006 and July 13, 2006 incidents described in the indictment.

4. During the meeting, Defendant was presented with a Cooperative Understanding Agreement, which was signed by the Defendant.

5. The Defendant was made aware during the interview that he was involved in a criminal investigation being conducted by the Task Force and that charges would probably be filed against him but that he was not under arrest at the time of the interview.

6. Although the Defendant was on medication at the time of the interview, there was no

evidence that this medication effected his thought process.  In fact, the testimony was that Defendant was alert and responsive during the interview.

7.      Further, the Defendant was alert and responsive enough to decline answering any more questions when he was asked to provide drug involvement of other individuals he had identified stating that he did not want to be a "rat."   The interview was terminated by Sgt. Snyder at that point.

8.      Although Defendant was unable to leave his hospital bed and was on some medications, the court finds by a "totality of the circumstances" that his  "...freedom of action was not curtailed to a degree associated with formal arrest"; therefore, the Defendant was not in custody at the time of the interview and Sgt. Snyder was not required to give a *Miranda* warning.   *United States v. Braxton,* 112 F.3d 777, 781 (4th Cir. 1997);.

9.      The Government has proved by a preponderance of the evidence that the statements given by the Defendant Clark were voluntary.  *Lego v. Twomey,* 404 U.S. 477, 489 (1972).

10.     Although Defendant was paralyzed[1] and on medications at the time of the interview,  the evidence presented showed that he was alert and responsive during the interview; that his statements were freely given and that his "capacity for self-determination [was not] critically impaired." *United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir. 1987).

Therefore, the undersigned Magistrate Judge recommends that the District Court **DENY** Defendant's Motion to Suppress Alleged Statements [21].

## VI.      RECOMMENDATION AND CONCLUSION

---

[1] Defendant Clark now walks with the assistance of a cane.

For the above reasons, the undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Alleged Statements [21].

The Court notes the Defendant's objection to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any party who appears *pro se* and any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable John Preston Bailey. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: July 7, 2009**


_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE